285] 285

## HEALTH OCCUPATIONS − APPLICABILITY OF SELF-REFERRAL PROHIBITION TO PROVISION OF INFORMATION ABOUT OFF-HOURS PEDIATRIC ACUTE CARE FACILITY

December 12, 1994

*The Honorable Marsha G. Perry*
*House of Delegates*

You have asked for our opinion whether the State law prohibiting self-referral by health care practitioners applies to the provision of information about certain pediatric acute care facilities. Specifically, you have asked whether the law would prohibit a pediatrician from informing patients in his or her regular daytime practice of the availability of an off-hours acute care facility in which the pediatrician has an investment interest and at which the pediatrician provides services on a rotating basis.

We are not able to provide a categorical answer to your inquiry, because the applicability of the self-referral law depends on the particular circumstances surrounding the pediatrician-investor's presentation. On the one hand, the law applies if the pediatrician recommends that parents obtain a presently needed medical service for their child at the off-hours facility. In our view, the law also applies to a pediatrician who presents the information about the off-hours facility in such a manner as to encourage parents to use the services of the facility when the need for acute care during off-hours arises in the future, as it surely does for most young children. On the other hand, the law probably does not apply to a pediatrician who merely provides neutral information about the off-hours facility, along with comparable information about other sources of off-hours acute care.

**I**

**Background**

As we understand the facts, a number of pediatricians, each of whom is a member of a different group practice, have formed an entity to render pediatric services during the evening and weekends, when their respective group practice offices are closed. The pediatrician-investors are employed by the entity to render pediatric services. Non-investing pediatricians also are employed. Compensation for all employees is based on services rendered, not on referrals.

An acute care pediatric facility of this kind provides a more effective method of ensuring off-hours coverage than the traditional "cross-coverage," or rotating off-hours call arrangements with other pediatricians. In addition, these facilities provide an alternative to more expensive emergency room care.

You state that the pediatrician-investors inform the parents of new patients in their regular group practices of the existence of the acute care facility. The parents are told that they may bring their children to that facility for problems that do not require hospital emergency room care but that cannot wait until morning.

**II**

**The Self-Referral Prohibition**

*A.    Introduction*

Physicians and other health care practitioners are generally prohibited from referring patients to entities in which the practitioner has a financial stake:

> Except as provided in subsection (d) of this section, a health care practitioner may not refer a patient or direct an employee of or person under contract with the health care practitioner to refer a patient to a health care entity:

(1) In which the health care practitioner, the practitioner's immediate family, or the practitioner in combination with the practitioner's immediate family owns a beneficial interest; or

(2) With which the health care practitioner, the practitioner's immediate family, or the practitioner in combination with the practitioner's immediate family has a compensation arrangement.

§1-302(a) of the Health Occupations ("HO") Article, Maryland Code.[1]

This law, enacted as Chapter 376 of the Laws of Maryland 1993, was a response to growing concern about over-utilization of services and increased costs resulting from the actions of physicians in referring patients to medical facilities in which the physicians have investments. In his testimony on the bill, the sponsor, Delegate Ronald A. Guns, Chairman of the House Environmental Matters Committee, stated:

> The evidence is overwhelming that these referral relationships result in abuse, over-charging, and over-utilization. I've attached a list of the relevant studies conducted on this subject for your review. As you'll see, the evidence indicating abuse has been clearly and objectively demonstrated. The buying and selling of referrals is costing all of us money and subjecting many of us to medical procedures and tests which we do not need. As former Inspector General Richard Kusserow stated: "While some of the partnerships may be well intentioned, a review of the offering material indicates that most are deliberately structured as conduits for payments to doctors in exchange for

---

[1] Certain existing financial arrangements are given the benefit of a "grandfather" clause, allowing referrals to continue until March 15, 1997. *See* Chapter 376 of the Laws of Maryland 1993, Section 4.

referrals."   To use a simpler term, many of these relationships are *kickbacks*.

The legislative files contain studies suggesting that physicians who self-refer tend to order more, and more expensive, procedures. *See, e.g.,* Bruce J. Hillman *et al., Frequency and Costs of Diagnosis Imaging in Office Practice − A Comparison of Self-Referring and Radiologist-Referring Physicians*, 323 New Eng. J. of Med. 1604 (Dec. 6, 1990); statement of Michael Zimmerman, Director of Medicare and Medicaid Issues, General Accounting Office, Before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce (June 8, 1989).  Other articles reflected the growth of companies designed to give physicians large returns on investment in exchange for referrals. *See* Michael Mason, *A Little Clinic on the Side*, Newsweek, March 30, 1992; Gretchen Morgenson, *The Doctors and the Dealmakers*, Forbes, April 15, 1991; Rhonda Brammer, *Dubious Practice,* Barron's, March 30, 1992; Michael Woldholz and Walt Bogdanich, *Doctor-Owned Labs Earn Lavish Profits in a Captive Market*, The Wall Street Journal, March 1, 1989.

## B.    *Referrals By Pediatrician-Investors*

It is clear that the pediatrician-investors have a "beneficial interest" in the off-hours pediatric facility.  The term "beneficial interest" is defined as "ownership, through equity, debt, or other means, of any financial interest."  HO §1-301(b)(1).  Thus, the pediatrician-investors are included within the self-referral law unless giving information about the off-hours facility to patients at the beginning of the doctor-patient relationship does not constitute a "referral."[2]  HO §1-301(1) defines "referral" as follows:

> (1)   "Referral" means any referral for health care services.

> (2)  "Referral" includes:

---

[2] Pediatrician employees of the facility who are not investors would not be covered, however.  Although the referral prohibition extends to entities with which a practitioner "has a compensation arrangement," HO §1-302(a)(2), the term "compensation arrangement" does not include "a bona fide employment agreement."  HO §1-301(c)(2)(ii).

(i)  The forwarding of a patient by one health care practitioner to another health care practitioner or to a health care entity outside the health care practitioner's office or group practice; or

(ii) The request or establishment by a health care practitioner of a plan of care for the provision of health care services outside the health care practitioner's office or group practice.

We are to construe this provision by giving its terms their "ordinary and natural meaning."  *See Rettig v. State*, 334 Md. 419, 423, 639 A.2d 670 (1994).  The language is to be "construed reasonably with reference to the purpose, aim, or policy of the enacting body." *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590 (1992).[3]

The scope of the key term "health care services" is not entirely clear.  Unquestionably, the term denotes a specific diagnostic or treatment service related to a patient's present complaint.  So, for example, if a parent calls the child's pediatrician about a specific problem and is told by the pediatrician (who is also an investor) to consult a specialist at the off-hours facility, a "referral for health care services" will have been made.  This example is precisely covered by HO §1-301(l)(2)(i):  "[t]he forwarding of a patient ... to another health care practitioner ... outside the [first] ... practitioner's office or group practice."[4]

---

[3] Although the overall objective of the State self-referral law may parallel that of the comparable federal law, the relevant language is not identical.  *See* 42 U.S.C. §1395nn(a)(1)(A) (referral prohibited "for the furnishing of designated health services").  The legislative history of the State law does not evidence an intent that the State law precisely mirror outcomes under the federal law.  Hence, we believe that an independent analysis is required; we cannot simply discern the result that would be reached under federal law and surmise that the same result would be intended under State law.

[4] For the reasons that will be discussed below, the acute care facility is not a "group practice" as defined by the self-referral law.  *See* note 6 below and accompanying text.

Moreover, the term "health care services" embraces a future series of diagnostic or treatment services. No other meaning can reasonably be ascribed to the phrase "a plan of care for the provision of health care services" in HO §1-301(l)(2)(ii). So, for example, if a child has a condition that will likely call for recurrent medical services of some kind, foreseeably needed at off-hours, and if a pediatrician-investor describes the availability of such services at the off-hours facility, as a practical matter the pediatrician-investor will have established a "plan of care" for those anticipated, specific services.

We are less certain whether the "plan of care" language extends to the indefinite range of services that an otherwise health child might need in the future. Since virtually every child gets sick or injured at some point, and the odds are that the problem will arise during off-hours, a pediatrician's presentation to parents about the availability of acute care services at the off-hours facility may be seen as a discussion of a "plan of care." Whether the pediatrician "request[s] or establish[es]" the plan of care, however, will depend on the extent to which the pediatrician steers the parents to the off-hours facility. As a practical matter, parents would almost certainly use the off-hours facility specifically vouched for by the pediatrician in whom they have placed their trust.

Yet at some point in the spectrum of possible discussions between pediatrician and parents about off-hours care, the element of independently formed parental choice would be so great that no "referral" is involved. For example, if the parents were merely informed of all local pediatric acute care facilities, including the facility in which the pediatrician has an interest, and it was made clear that off-hours care for the child was not limited to that facility, that action would probably not constitute a "referral." *See Allstate Ins. Co. v. Auto Damage Appraiser Licensing Bd.*, 507 N.E.2d 250, 252 (Mass. 1987). Then, the key decisions − whether emergency services are necessary in a given situation, and whether to use the off-hours facility or the emergency room − would be made by the parents, not by the pediatrician.

## III

### Exceptions to the Prohibition

HO §1-302(d) lists eight exceptions to the general rule against self-referral. Five of them are self-evidently inapplicable and do not require analysis. The other three are also inapplicable, for the reasons discussed below. Therefore, to the extent that a pediatrician-investor does provide a "referral" to the off-hours facility, the pediatrician is not exempted from the prohibition on self-referral.[5]

HO §1-302(d)(3) exempts "a health care practitioner who refers a patient to another health care practitioner in the same group practice as the referring health care practitioner." This provision would exempt referrals to an acute care facility in which a pediatrician had an interest if that facility could be considered a "group practice." HO §1-301(f), however, defines a "group practice" as:

> [A] group of two or more health care practitioners legally organized as a partnership, professional corporation, foundation, not-for profit corporation, faculty practice plan, or similar association:

_____

[5] We note that in 1992, when this law was first proposed, the Environmental Matters Committee added an exception for:

> A pediatrician referring a patient to an acute care pediatric facility that provides care to patients of the pediatrician who:
>
> (i) owns a beneficial interest in the facility; and
>
> (ii) provides health care services at the facility.

The Economic and Environmental Affairs Committee recommended summer study, but also recommended that if the bill were not sent to summer study, certain amendments would be made, including one that would delete the acute care facility exemption. _See_ letter from Senator Clarence W. Blount to Senator Thomas Patrick O'Reilly on House Bill 1374 of 1992, (April 1, 1992). The 1992 bill was sent to summer study and the 1993 bill was drafted without the exemption.

(1) In which each health care practitioner who is a member of the group provides substantially the full range of services with the practitioner routinely provides through the joint use of shared office space, facilities, equipment, and personnel:

(2) For which substantially all of the services of the health care practitioners who are members of the group are provided through the group and are billed in the name of the group and amounts so received are treated as receipts of the group; and

(3) In which the overhead expenses of and the income from the practice are distributed in accordance with the methods previously determined on an annual basis by members of the group.

Because members of the acute care facility also have regular daytime pediatric practices, they do not provide "substantially all of the services" that they provide "through" that facility. Therefore, it is not a "group practice."[6]

HO §1-302(d)(3) exempts: "A health care practitioner with a beneficial interest in a health care entity who refers a patient to that health care entity for health care services or tests, if the services or tests are personally performed by or under the direct supervision of the referring health care practitioner." While this provision would provide an exemption for a pediatrician-investor who tells a parent to bring a child to the acute care facility at a time when that pediatrician will be on duty, would not apply if the referral was for

---

[6] This definition is taken from the federal law on self-referral. *See* 42 U.S.C. §1395nn(h)(4)(A). Presumably, the purpose of the requirement that substantially all of a physician's services be provided through a group if it is to be considered a "group practice" is to prevent evasion of the law by physicians who would provide minor services for entities in which they are truly only passive investors. One way to allow referral by pediatricians to acute care facilities in which they practice would be to ease this restriction enough to encompass the possibility that a physician may legitimately be involved in more than one practice, while maintaining enough of a limit to avoid sham practices designed to evade the law.

an indefinite series of services at the off-hours facility, because there is no way to know whether the referring pediatrician will be present to provide services or supervision.[7]

HO §1-302(d)(5) provides an exemption for:

> A health care practitioner who has a beneficial interest in a health care entity if, in accordance with regulations adopted by the Secretary:
>
> (i)  The Secretary determines that the health care practitioner's beneficial interest is essential to finance and to provide the health care entity; and
>
> (ii) The Secretary, in conjunction with the Health Resources Planning Commission, determines that the health care entity is needed to ensure appropriate access for the community to the services provided at the health care entity.

While it is conceivable that some acute care facilities could be exempted under this section, at this time the Secretary has neither proposed nor adopted implementing regulations for this provision. Therefore, no exemption is available under HO §1-302(d)(5).

If the General Assembly determines that prohibited "referrals" to the off-hours facility by pediatrician-investors ought instead to be allowed, one way to achieve that policy goal would be the enactment of another exception, along the lines of the one considered in the 1992 Session.[8]

---

[7] HO §1-301(d) requires that a physician be "present on the premises" and "available for consultation within the treatment area" in order to be in "direct supervision."

[8] *See* note 5 above.

**IV**

**Conclusion**

In summary, it is our opinion that the self-referral law, HO §1-302(a), neither categorically prohibits nor categorically allows a pediatrician to inform parents, as part of a planning discussion about care contingencies for their child, of the availability of off-hours care at an acute care pediatric facility in which the pediatrician has invested. The applicability of the law depends on the particular circumstances surrounding the discussion.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Jack Schwartz
> *Chief Counsel*
> *Opinions & Advice*
>
> Kathryn M. Rowe
> *Assistant Attorney General*

***Editor's Note:***

In Chapter 253 of the Laws of Maryland 1997, the General Assembly modified the provision of the self-referral law, HO §1-302(a)(2), relating to the beneficial interest of a health care practitioner's immediate family. In 83 *Opinions of the Attorney General* 142 (1998), we discussed the application of the self-referral law, as well as a range of other laws, to a different fact pattern involving speciality care physicians.